IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BELINDA RAY,                                          )
                                                     )
      Plaintiff,                                   )
                                                     )  Civil Action No.: 2:08-cv-757-WKW
v.                                                   )
                                                     )
MICHAEL DONLEY, SECRETARY,                           )
DEPARTMENT OF THE AIR FORCE,                         )
                                                     )
      Defendant.                                   )

## DEFENDANT'S REPLY MEMORANDUM

**COMES NOW** Defendant, by and through Leura G. Canary, United States Attorney for the

Middle District of Alabama, and files this Reply Memorandum.  Plaintiff has not met her burden of

overcoming the doctrine of intra-military immunity and showing that this Court has subject matter

jurisdiction.  Furthermore, Plaintiff does nothing to rebut Defendant's legitimate, non-discriminatory

reasons for its challenged decisions.  For these reasons, the Court should grant summary judgment.

## ARGUMENT AND CITATION OF AUTHORITY

Defendant explained in his Initial Memorandum that Plaintiff's Title VII claims failed as a

matter of law for two reasons.  First, Plaintiff's claims are non-justiciable under the intra-military

immunity doctrine and outside the scope of Title VII because she holds a hybrid military-civilian Air

Reserve Technician (ART or military technician) position with the Air Force Reserve that is

"irreducibly military in nature," she applied for another supervisory ART position, and her claims

cannot be disentangled from the military aspects of the positions.  (Init. Mem. at 16-27).  Second,

even assuming arguendo that Plaintiff's claims were justiciable, she could not rebut Defendant's

legitimate, non-discriminatory reasons for its detail and promotion decisions.  (Init. Mem. at 27-38).

In Response, Plaintiff abandons her failure-to-detail claims. (Pl. Resp. at 1). She then argues that her failure-to-promote claims arise from her role as a civil-service employee, while ignoring the "dual-status" nature of her ART position, disregarding undisputed facts that render her claims non-justiciable under both of the legal approaches to analyzing the justiciability of ART claims, and failing to cite a single relevant supporting case. (Pl. Resp. at 13-22). Finally, Plaintiff declares that she was the most qualified person for the promotion based on her own assessment of her experience, while ignoring the fact that she failed to adequately marshal her credentials during her 15-minute interview and the decision-maker was entitled to rely on the interview in making his decision. (Pl. Resp. 22-31). Plaintiff's Response does not change Defendant's entitlement to summary judgment.

## I.    Plaintiff's Claim Should Be Dismissed for Lack of Subject Matter Jurisdiction.

Plaintiff's claims must be dismissed as non-justiciable because they relate to hybrid military-civilian ART positions and improperly intrude upon military affairs. See, e.g., Fisher v. Peters, 249 F.3d 433, 438 (6th Cir. 2001). An ART is statutorily defined as a "military technician (dual status)" who is a federal civilian employee "required as a condition of employment to maintain membership in the ... Reserve" and "assigned to a civilian position as a technician in the administration and training of the ... Reserve...." See 10 U.S.C. § 10216. As Defendant explained on pages 20-23 of his Initial Memorandum, courts have adopted two approaches to determine whether a dual-status military technician's Title VII claims are non-justiciable due to intra-military immunity.[1]  See Wetherill v. Geren, 644 F. Supp. 2d 1135, 1140-41 (D.S.D. 2009). The first approach holds that military technician positions are "irreducibly military in nature" such that their military and civilian

---

[1]The National Guard has analogous dual-status military technicians that serve a similar function to the ARTS in the Air Force Reserve. See 10 U.S.C. § 10216(a)(1)(A); 32 U.S.C. § 709. Courts have not drawn any distinction between these two types of dual-status military technicians.

aspects cannot be dissected and Title VII claims asserted by them are always non-justiciable.  See Fisher, 249 F.3d at 439; Leistiko v. Stone, 134 F.3d 817, 820-821 (6th Cir. 1998); Wright v. Park, 5 F.3d 586, 587 (1st Cir. 1993).  The second approach theoretically recognizes that military technicians may be able to pursue a Title VII claim if they present claims that arise "wholly" or "purely" from the civilian aspect of their job but that all other claims are barred.  See Walch v. Adjutant Gen'ls Dep't of Texas, 533 F.3d 289, 299-300 (5th Cir. 2008); Willis v. Roche, 256 Fed. Appx. 534, 537 (3rd Cir. 2007); Overton v. New York State Div. of Mil. & Naval Affairs, 373 F.3d 83, 91 (2d Cir. 2004); Brown v. United States, 227 F.3d 295, 295 (5th Cir. 2000); Hupp v. Dep't of the Army, 144 F.3d 1144, 1148 (8th Cir. 1998).  Defendant demonstrated that Plaintiff's claims were non-justiciable under both approaches.  (Init. Mem. 22-27).  In her Response, Plaintiff ignores the first approach and only argues that her claims are 'purely civilian' under the second approach. (Pl. Resp. at 14-18).  In doing so, however, she disregards undisputed and material facts and fails to provide a single case in which a court held that claims such as her claims were justiciable.

### A.   The Military Technician Position is Irreducibly Military in Nature.

As an initial matter, Defendant contends that this Court should adopt the persuasive and practical approach of the First and Sixth Circuits and hold that the military technician position is "irreducibly military in nature" such that all claims by military technicians are non-justiciable.  See Fisher, 249 F.3d at 443; Wright, 5 F.3d at 589.  In Wright, for example, the plaintiff was a military technician who served as a maintenance supervisor in his military and civilian roles and his mission was to maintain aircraft in a combat-ready state and train others to do the same.  See Wright, 5 F.3d at 586.  He was discharged from the civilian aspect of his position and thus was forced to vacate the military aspect.  See id.  The First Circuit reviewed the dual civilian and military status of military

technicians and observed that they occupy positions that are "martial in character" in providing full-time support to the military.  See id.  The court noted that "since [military] technician positions are encompassed within a military organization and require the performance of work directly related to national defense, such positions are themselves military in nature."  See id. at 588-589.  Accord NeSmith v. Fulton, 615 F.2d 196, 201 (5th Cir. 1980) (military technician "in substance" is a position in "a military organization" such that the decision to terminate a military technician from the civilian part of his hybrid position involved internal military matters). The court further determined that the military and civilian aspects of a military technician were so "inextricably intertwined" that the "job's dual aspects are inseparable."  See Wright, 5 F.3d at 588-589.  The court concluded that the plaintiff "necessarily suffered the injury of which he complains in his military capacity" and that his claims were incident to service and not justiciable.  See id.

Plaintiff, who bears the burden of showing that there is subject matter jurisdiction, fails to explain why this well-reasoned approach should not govern.  See McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002).  Plaintiff holds a military technician position with hybrid civilian and military aspects that cannot be disentangled or bifurcated, and she at all times performed assignments in support of a military mission.[2]  See Wright, 5 F.3d at 588-89.  Indeed, due to their inherent military nature, ARTs must: (1) "[m]eet Air Force physical and military assignment requirements for the reserve position to which assignment is made;" (2) "[m]aintain active membership in the Air Force Reserve unit in which the position is authorized;" and (3) "[b]e assigned militarily to the

---

[2]As one district court has explained in discussing the dual-status roles of an ART: "[f]irst, the ART is a "a military reservist who occupies a military rank in a specific reserve unit and who may be activated during a time of crisis or other necessity.  Second, the ART is a civilian technician who performs essentially the same military duties during his or her civilian week."  See Ridgeway v. Aldridge, 709 F. Supp. 2d 265, 267 (D. Ma. 1989) (emphasis added).

designated ART position." (Underkofler Dec., Ex. A). In her hybrid role, Plaintiff held a military technician position with the requisite military rank of Master Sergeant and military duty title of Assistant Chief of Education and Training. (Pl. Dep. 36:3-37:20, 41:13-25, 50:15-51:7, Ex. 5; Leathers Dec. ¶ 5). In both the civilian and military aspects of her ART job, Plaintiff reported to the same building, office and desk, and performed the same duties providing on-the-job training support to reservists while using the same computer, email address, and telephone extension. (Pl. Dep. 87:25-91:13, 92:5-12, 94:9-18; Leathers Dec.¶ 5). She also had common and overlapping civilian and military chains of command such that all her civilian superiors were also her military superiors and they were always in military uniform and addressed by rank. (Pl. Dep. 53:8–56:2, 57:2-59:23, 93:9-95:4, 122:11-123:3, Exs. 6-7; Leathers Dec. ¶¶ 3-5, Ex. A; Underkofler Dec. ¶¶ 3, 6).

The inherent and irreducibly military nature of the ART position is exemplified in this case by the fact that Plaintiff challenges a non-selection to the Chief, Education and Training position, a supervisory ART position that supervised ARTS and was responsible for an office that ensured the proper military on-the-job training of reservists. (Leathers Dec. ¶¶ 2, 10; Pl. Dep. 57:16-24, 70:6-14, 112:4-23, Ex. 9; Forshey Dec. ¶ 4). The Chief's OJT duties included military-specific elements that directly impacted the ability of the Air Reserve Wing to fly and repair war planes, transport troops and supplies, and perform its combat mission. (Leathers Dec. ¶ 2; Underkofler Dec. ¶ 6). Furthermore, since the Chief position was an ART position, whoever received the promotion would also be automatically placed by the Air Force Reserve in the corresponding military duty position of Chief, Education and Training, where he or she would perform the same assignments during monthly active-duty Unit Training Assemblies and other military tours. (Forshey Dec. ¶ 7; Leathers Dec. ¶ 7;Underkofler Dec. ¶ 6, Ex. A). It follows that if Plaintiff was promoted, the selection would

change her civilian <u>and</u> military duty title and assignments.  (Forshey Dec. ¶ 7; Leathers Dec. ¶ 7).

      This fact illustrates, in part, why the civil and military aspects of Plaintiff's job are "not scissle..." [but are] ... "inseparable; they are, like Chang and Eng, joined at the chest."  <u>See</u> <u>Fisher</u>, 5 F.3d at 589.  In short, Plaintiff wants the Court to dictate the officer who will be responsible for overseeing military-specific OJT issues during active duty assignments.  Such an intrusion into military matters would be unprecedented, and that is why Plaintiff has <u>no</u> legal authority to support her claims.  <u>See</u>, <u>e.g.</u>, <u>Walch</u>, 533 F.3d at 301 ("a court may not reconsider what a [plaintiff's] superiors did in the name of personnel management – demotions, determining performance level, reassignments to different jobs – because such decisions are integral to the military structure ... [and]... in the military context the disruption of judicially examining each claim in each case has been held to undermine important other concerns."); <u>Paulk v. Harvey</u>, 2006 U.S. Dist. LEXIS 70169, *13 (M.D. Ala. Sept. 27, 2006) ("[Plaintiff, a military technician] asks the Court to review a decision by his military superiors concerning the selection of the officer [and military technician]  who would supervise other military technicians.  The Court cannot do so as the position is military in nature.").

      In sum, the intra-military immunity doctrine is a judicial recognition that civilian courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have" and should refrain from hearing the types of claims that might involve the judiciary "in sensitive military affairs at the expense of military discipline and effectiveness."  <u>See</u> <u>Chappell v. Wallace</u>, 462 U.S. 296, 305 (1983);  <u>Johnson v. U.S.</u>, 481 U.S. 681, 690-691 (1987).  Plaintiff's military technician position is "irreducibly military in nature," and it cannot be neatly dissected by the Court without infringing on military authority and structure.  <u>See</u> <u>Wright</u>, F. 3d at 591 ("Since a technician's dual roles are too tightly imbricated to be pried apart at a litigant's whim,

[Plaintiff] necessarily suffered the injury of which [s]he complains in [her] military capacity").

**B.    Plaintiff's Claims Are Not "Purely Civilian."**

Even if this Court adopted the approach that allows military technician claims to proceed if they are "purely civilian," the undisputed facts establish that Plaintiff's claims are not "purely civilian."  See Overton, 373 F.3d at 96.  Pursuant to this approach, courts have held that military technician claims are not "purely civilian" and are non-justiciable if the claims:  (1) challenge decisions by a civilian supervisor who is also a plaintiff's military superior; (2) challenge decisions affecting a plaintiff's military assignments or job titles; (3) challenge decisions involving consideration of a plaintiff's military experience; or (4) otherwise relate to an inherently military affair.  See id.; Urie v. Roche, 209 F. Supp. 2d 412, 417 (D.N.J. 2002); Willis, 256 Fed. Appx. at 537-538; Hupp, 144 F.3d at 1148; Wetherill, 644 F. Supp. 2d at 1138, 1141.  In her Response, Plaintiff ignores the material and undisputed facts that render her claims not "purely civilian" under this approach – her overlapping civilian and military chains of command, the effect of a promotion on her military title and assignments, the consideration of military qualifications, and the inherently military duties of the positions at issue – and focuses on an irrelevant active/non-active duty distinction and the fact that her job had a civilian element.  (Pl. Resp. at 16-22).  As set forth below, Plaintiff's claims are simply not "purely civilian" based on the undisputed facts.

**1.    The "Purely Civilian" Approach and the Undisputed Facts.**

First, Plaintiff's claims are not "purely civilian" because she challenges decisions by civilian supervisors who were also in her military chain of command.  See Overton, 373 F.3d at 96. Plaintiff challenges a decision by Captain Leathers, Colonel Forshey, and Colonel Underkofler, all of whom were her civilian and military superiors and wore military uniforms.  (Pl. Dep. 53:8–56:2, 57:2-59:23,

- 7 -

93:9-95:4, 97:7-15, 122:11-123:3, Exs. 6-7; Leathers Dec. ¶¶ 3-5, Ex. A; Underkofler Dec. ¶¶ 3, 6).

The fact that her civilian supervisors were also her military superiors implicates military concerns and

renders her claims non-justiciable.  See Overton, 373 F.3d at 96; Tucker v. Wynne, 2009 U.S. Dist.

LEXIS 69546, at *11-12 (D.N.J. Aug. 10, 2009) (fact that plaintiff's supervisors were same in civilian

and military chains of command was factor in concluding claims "do not arise solely from the civilian

aspects" of position.); Digirogio v. New Jersey, 2009 U.S. Dist. LEXIS 55614, at * 8-11 (D.N.J. June

29, 2009) (as plaintiff's supervisor served in that capacity for military and civilian roles, "it is

impossible to argue that her allegedly discriminatory conduct only arose in the course of their civilian

relationship."); Urie, 209 F. Supp. 2d at 417 (military technician claim was not "wholly civilian"

where she challenged conduct by "an individual who served as her civilian supervisor, but who was

also her military superior officer").   In short, a military technician may not bring a claim that

challenges the conduct of a military superior.  See Overton, 373 F.3d at 96; Mier v. Owens, 57 F.3d

747, 750 (9th Cir. 1995).  Indeed, the Supreme Court has observed that "conduct in combat inevitably

reflects the training that precedes combat," and thus "[c]ivilian courts must, at the very least, hesitate

long before entertaining a suit which asks the court to tamper with the established relationship

between enlisted military personnel and their superior officers; that relationship is at the heart of the

necessarily unique structure of the military establishment."  See Chappell, 462 U.S. at 300.

Second, Plaintiff's claims are also not "purely civilian" because the challenged promotion

decision would result in a change in Plaintiff's military duty title and work assignments.  See

Wetherill, 644 F. Supp. 2d at 1138, 1141.  A promotion to the supervisory ART position of Chief,

Education and Training, would change Plaintiff's military duty title (from Assistant Chief to Chief)

and military work assignments (from those performed by an Assistant Chief to those performed by

the Chief), as well as her civilian duty title and assignments.  (Forshey Dec. ¶ 7; Leathers Dec. ¶ 7; Underkofler Dec. ¶ 6, Ex. A).  It follows that review by this Court would effectively involve intruding upon an Air Force decision as to who is going to perform certain military assignments.  This type of intrusion infringes upon central aspects of the military's unique structure and is outside the scope of judicial review.  See, e.g., Walch, 533 F.3d at 301.  See also Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998) ("decisions relating to the promotion ... of civilian members of the ... Guard, including technicians, are 'integrally related to the military's unique structure.'"); Willis, 256 Fed. Appx. at 537-538 (ART, a Chief of Relocation, Employment, and Training of his Wing, could not challenge decision to remove him as Test Control Officer on career development course since, inter alia, the course was a military training requirement designed to "provide individual service members with the skills and knowledge to perform their [military] duties effectively."); Wetherill, 2009 U.S. Dist. LEXIS 67721, at *3, *15) (military technician's claim that she was given new work assignment in retaliation for complaint "barred in light of the military component of her military technician status.").

Third, Plaintiff's claims cannot be construed as "purely civilian" because the military qualifications of the applicants were placed at issue and considered in the promotion process.  See Hupp, 144 F.3d at 1148.  During her interview, Plaintiff discussed her military supervisory and other active duty experience in support of her qualifications for the promotion.  (Pl. Dep. 162:15-165:18, 184:2-16; Butler Dec. ¶ 5; Leathers Dec. ¶¶ 17-18).  Furthermore, Colonel Underkofler concurred in Captain Leather's selection as it was consistent with what he knew of the applicants.  (Underkofler Dec. ¶ 10).  In particular, Colonel Underkofler had heard very positive reviews of Parker's performance at Keesler Air Force Base and in the Maintenance Group, such as how he was a "sharp troop" and was making reservists get OJT records "up-to-speed," while he found Plaintiff to be

uninspiring and lacking in military bearing. (Underkofler ¶¶ 9-10). In these circumstances, Plaintiff, who wanted her military qualifications to be considered and discussed them during her interview and continues to stress them to this day, cannot assert that her claims are "purely civilian."[3] See Hupp, 144 F.3d at 1148 (military technician's claim not justiciable where some decision-makers considered some military experience in making promotion decision to supervisory military technician); Kearsley v. Brownlee, 2004 U.S. Dist. LEXIS 1926, at *9 (D. Minn. Feb. 10, 2004) (military technician claim not purely civilian when technician decisions considered, in part, military experience).

Finally, Plaintiff's claims cannot be said to be "purely civilian" as Plaintiff's military technician position, and the Chief position she sought, included assignments and duties that were inherently military in nature. See Willis, 256 Fed. Appx. at 537-538. Plaintiff's military technician position and the Chief position both involve OJT training duties related to the military-specific training of reservists. (Leathers Dec. ¶¶ 2, 10; Pl. Dep. 70:6-12; Forshey Dec. ¶ 4). In carrying out this task, the Chief performs the essential and inherently military function of ensuring reservists are properly trained and combat-ready to perform their military mission in the National Defense. (Underkofler Dec. ¶ 6; Leathers Dec. ¶ 2). Given this inherently military aspect of the Chief's position, Plaintiff's claims cannot be said to be "purely civilian." See Willis, 256 Fed. Appx. at 537-538; Tucker, 2009 U.S. Dist. LEXIS 69546, at *10 (considering, inter alia, that plaintiff's ART position "involves military aircraft repair, which ... is tied to the military chain of command" and he performed his work on an Air Force base when concluding claims were not "purely" civilian).

_____

[3]In her Response, Plaintiff also relies upon her military qualifications, and the opinion of Major Butler, in arguing she was more qualified than Parker. (Pl. Resp. at 36-30). She also relies upon the recommendation of Lubbert, who opined that Plaintiff's civilian and military experience made her most qualified for promotion. (Pl. Dep. 223:14-20, Ex. 10; Lubbert Tran. 241:23-242:1).

In sum, Plaintiff holds a military technician position with intertwined military and civilian duties, and she seeks to challenge the decision of superiors who also serve in her military chain of command to not promote her to a supervisory military technician position with a different military duty title and assignments, in which she would have supervised other military technicians and been responsible for overseeing the military-specific OJT of reservists.   (Leathers Dec. ¶¶ 2-10; Underkofler Dec. ¶¶ 4-10).   Under these facts, Plaintiff's claims are inherently military, implicate military duties and affairs, and are not purely civilian.  See Willis, 256 Fed. Appx. at 537; Tucker, 2009 U.S. Dist. LEXIS 69546 at *9-10; Urie, 209 F. Supp. 2d at 417.

## 2. Plaintiff's Meritless Arguments That Her Claims Are "Purely Civilian."

In response to the extensive case law establishing that under the facts of this case Plaintiff's claims are not "purely civilian," Plaintiff presents no supporting case law and only a few scattered arguments. (Pl. Resp. at 15-22).  As set forth below, her arguments are easily dismissed.

### a. Plaintiff Lacks Any Legal Authority For Her Claims to Proceed.

Perhaps not surprisingly, Plaintiff provides no legal authority for her claims to proceed in the face of the intra-military immunity bar.  See Overton, 373 F.3d at 94 ("each Circuit to address this issue has held on the facts before it that a [Title VII] action brought by a [military] technician could not proceed in the face of the Feres doctrine.  The courts have differed, though, in their analysis."). In response to the numerous cases cited by Defendant holding that military technician claims were barred by intra-military immunity, Plaintiff cites only two cases supporting her assertion that her claims can proceed.  (Pl. Resp. at 17-18).  Plaintiff's two cases, however, are easily distinguishable.

The first case cited by Plaintiff, Laurent v. Geren, 2008 U.S. Dist. LEXIS 81292 (D. V.I. Oct. 10, 2008), is the extremely rare case where a military technician did present "purely civilian" claims.

The plaintiff was a military technician who alleged that a co-worker harassed her while she was working during the week in her civilian capacity.  See id. at *3, 9.  See Walch, 533 F.3d at 299-300 (suggesting, in dicta, that types of claims a military technician might be able to pursue included claims that involved "discriminatory conduct on the part of peers or subordinates.").  The plaintiff's claims in Laurent did not challenge the conduct of a civilian supervisor who was also in her military chain of command, did not challenge a decision that would impact her military work assignments or duty title, and did not challenge a decision where her military qualifications were considered.  See Laurent, 2008 U.S. Dist. LEXIS 81292, at *3, 9.  The case, therefore, is distinguishable from the facts of Plaintiff's case, where all of these factors are present.  The other case cited by Plaintiff, Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475 (9th Cir. 1997), is irrelevant as it involves claims by a civilian Air Force employee and not by a military technician.  In short, no court has held a military technician has a justiciable claim under facts similar to those in Plaintiff's case.

      b.      **Plaintiff Misapplies the Incident-to-Service Test.**

Plaintiff's main argument in her Response is that her claims arise purely from her civilian position because she only spends 2% of her time on active Reserve duty and the challenged decision was made when she and her superiors were not on active duty.  (Pl. Resp. 15-17).  In support of her argument, Plaintiff misapplies the incident-to-service test to assert that her claims do not arise from her active Reserve duty.  (Pl. Resp. at15).  Plaintiff's arguments are insufficient to save her claims.

As an initial matter, the Supreme Court has explained that "a service member is injured incident to service" if the injury is "because of [her] military relationship with the Government."  See Johnson, 481 U.S. at 689.  Pursuant to the "incident to service" test traditionally applied under the Feres doctrine when analyzing service members' tort claims, a court may look at three factors to

determine whether a claim is incident to the plaintiff's military service: (1) duty status; (2) site of injury; and (3) activity being performed.  See, e.g., Parker v. United States, 611 F.2d 1007, 1013-1015 (5th Cir. 1980).  Plaintiff approaches this test as if she held two jobs with the Air Force, a civil service job and a separate reserve one.  Plaintiff's argument, however, ignores the fact that an ART job is undisputedly a hybrid, dual-status position.  See 10 U.S.C. § 10216.  Accordingly, if this test were applicable, the proper application would ask whether Plaintiff's claims relate to her "dual-status" service that forms the basis of her military relationship with the government, whether they arose or relate to decisions on Air Force bases, and whether they involve "dual-status" activities.  See Walch, 533 F.3d at 297 (applying Feres test to Bivens claim and asking whether claims arose out of "dual status" relationship.); Paulk, 2006 U.S. Dist. LEXIS 70169, at *9-10.  In this case, the undisputed answers are affirmative for all three questions:  Plaintiff held a dual-status ART position when she applied for a supervisory dual-status ART position at Maxwell Air Force Base, and if she had been hired she would have assumed a new dual-status civilian and military duty title and work assignment. Plaintiff's claims arise incident to her dual-status service and are therefore barred.  See, e.g., Overton, 373 F.3d at 91-96; Fisher, 5 F.3d at 591; Tucker, 2009 U.S. Dist. LEXIS 69546, at *9-13.

Indeed, the Second Circuit reviewed the law and concluded that "the Feres doctrine's bar to lawsuits that are 'incident to military service' has generally been applied to suits by [military technicians] arising while they are being paid as civilian employees."  See Overton, 373 F.3d at 91. The court noted two strong policy reasons to conclude that such claims were incident to service even if the alleged injuries occurred while the plaintiff was performing the nominally civilian aspects of the military technician position.  See id. at 92-93.  These two reasons are that:  (1) a military technician's "employment as a civilian is ordinarily in support of a mission that is ultimately military

- 13 -

in nature;" and (2) "there are concerns about the intrusive nature of the inquiry that would be necessary for a federal court to disentangle a plaintiff's civilian and military duties if the <u>Feres</u> doctrine were applicable only to suits arising out of the latter." <u>See id.</u>  Following this logic, courts have "nearly unanimously applied the <u>Feres</u> doctrine" to military technician lawsuits.  <u>See id.</u> at 91.

Furthermore, the Second Circuit rejected the plaintiff's argument that his claims were "purely civilian" because both he and his civilian and military supervisor were in civilian status at the time of the injury.  <u>See id.</u> at 85, 96.  In finding no merit to the plaintiff's distinction, the court noted that:

> [plaintiff's] closely related dual roles engendered closely related military and civilian relationships with [his supervisor]. The nominally civilian, yet distinctly military, relationship between the two was thus central to [plaintiff's] military mission and the military's unique structure of command. Any attempt surgically to dissect and analyze the civilian relationship between [plaintiff and his supervisor], with its military dimensions, moreover, would itself threaten to intrude into their military relationship.

<u>See id.</u> at 96.  The court concluded that "because [plaintiff's] lawsuit would likely intrude into and have an impact upon his military relationship with [his supervisor]," his lawsuit was <u>not</u> "purely civilian" and was thus barred by the intra-military immunity doctrine.  <u>See id.</u>  The rational of the Second Circuit in this case applies equally to Plaintiff's case.  <u>Cf.</u> <u>Walch</u>, 533 F.3d at 297 (noting <u>Feres</u> concerns were implicated in <u>Bivens</u> claim when plaintiff challenged military superior's decisions regardless of whether superior was active-duty military or a dual-status military technician).

Finally, other courts have also rejected similar attempts by military technicians to limit the <u>Feres</u> bar to only active-duty claims.  In <u>Tucker</u>, 2009 U.S. Dist. LEXIS 69546, at *9-13, for example, the plaintiff was an ART who argued that his claims arose when he was in civilian status and thus were not incident to his military service.  <u>See id.</u> at *12-13.  The court rejected this argument, noting that the plaintiff's conclusion "that because plaintiff was not on active duty or subject to military

discipline at the time of his alleged injuries" his claims were not subject to intra-military immunity was "an oversimplification of the analysis developed by courts to determine whether or not an injury attached to military service." See id.  The court noted that the question for the incident-to-service test was not whether a plaintiff was on active duty, but whether "a plaintiff's claims will allow the judiciary to become involved in military affairs at the expense of military discipline and chain of command." See id. at *13.  The court concluded that "as an ART, plaintiff's military and civilian status are intertwined" and he was barred by Feres from bringing suit under Title VII.  See id.

      c.     **Plaintiff's Inconsistent Approach.**

Finally, Plaintiff's arguments on the merits of the case illustrate the inconsistent nature of her arguments and how her claims are not "purely civilian."  In particular, Plaintiff wants this Court to hold that her claims are "purely civilian" and in doing so exclude references to her military experience and the opinion of Major Butler, a military superior who attended the interviews, took notes, and agreed that Parker had a much more enthusiastic and detailed interview.  (Pl. Resp. at 17; Butler 12/1/2009 Dec. ¶¶ 5-7).  Once past this jurisdictional barrier, however, Plaintiff wants the Court to focus extensively on Major Butler's opinion about Plaintiff's educational level and how important it was for the new Chief to have a B.A. to give advice to reservists.  (Pl. Resp. at 29-30).  She also wants weight given to her military supervisory experience and the departing Chief's recommendation that she be promoted due to her civilian and military performance.  (Pl. Resp. at 5, 28).

Plaintiff, however, cannot disavow some facts for jurisdictional purposes and then use those facts to argue the merits of her case.  Cf. American Nat'l Bank v. FDIC, 710 F.2d 1528, 1536 (11th Cir. 1983) (noting judicial estoppel applies "to parties from making a mockery of justice" by "the calculated assertion of divergent sworn positions").  Since her military experience and the opinion

- 15 -

of military supervisors are interwoven with her claims, either they are part of the case and can be considered such that her claims are rendered <u>not</u> "purely civilian" (as Defendant asserts) or they cannot be considered. Notably, as discussed <u>supra</u>, a claim is barred by intra-military immunity if a decision-maker considers military experience when making a promotion decision. <u>See</u> <u>Hupp</u>, 144 F.3d at 1148 (military technician's claim not justiciable where some decision-makers considered military experience in making promotion decision to supervisory military technician position)

### C.   Conclusion.

Plaintiff devotes much of her Response to trying to disentangle the civilian and military aspects of the ART position. In doing so, however, she misses the point. The ART position is a hybrid position that by its nature is <u>both</u> military and civilian. There is not a <u>single</u> case where a court has allowed a military technician to proceed with a claim under the <u>undisputed facts</u> presented in this case. Regardless of which of the two legal approaches this Court applies to Plaintiff's claims, they are non-justiciable. <u>See</u> <u>Wright</u>, 5 F.3d at 588; <u>Tucker</u>, 2009 U.S. Dist. LEXIS 69546, at *9-13.

## II.   Plaintiff's Claims Fail as a Matter of Law on the Merits.

Assuming <u>arguendo</u> Plaintiff's claims were justiciable, this Court should grant summary judgment because she cannot show pretext. Once an employer offers legitimate, non-discriminatory reasons for its actions, a plaintiff can avoid summary judgment <u>only</u> by offering sufficient evidence for a reasonable factfinder to <u>disbelieve</u> the proffered reasons and conclude they were not what motivated the employer. <u>See</u> <u>Silvera v. Orange County Sch. Bd.</u>, 244 F.3d 1253, 1259 (11th Cir. 2001). A plaintiff cannot quarrel with the wisdom of a reason or recast it. <u>See</u> <u>Chapman v. A.I. Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). The Eleventh Circuit has stressed that courts are precluded from deciding whether a decision was wise, nice, or accurate, and that they are

"responsible for drawing the lines on what evidence is sufficient to create an issue on pretext." See Rojas v. Florida, 285 F.3d 1339, 1344 (11th Cir. 2002). In Plaintiff's Response, she attempts to show pretext by arguing she was more qualified than Parker based on her own promotion criteria. (Pl. Resp. at 6, 26-30). Plaintiff does not, however, directly address the reason Captain Leathers gave for his decision, namely Parker's superior interview performance as demonstrated by longer and more detailed answers and greater enthusiasm. (Leathers Dec. ¶¶ 17-19, 24-25, Ex. D). Plaintiff's inability to refute the reason given by the decision-maker for the final hiring decision is fatal to her claims.

When a decision-maker asserts that he hired the most qualified applicant, a plaintiff seeking to show pretext must establish that "the disparities in qualifications [between the plaintiff and the candidate hired] ... [are] of such weight and signficance that no reasonable person, in the exercise of impartial judgment could have chosen the candidate selected over the plaintiff..." See Brooks v. County Comm'n of Jefferson County, Al., 446 F.3d 1160, 1163 (11th Cir. 2006); Cooper v. S. Co., 390 F.3d 695, 732 (11th Cir. 2004). Only by showing that no reasonable decision-maker would have made the same hiring decision does the plaintiff provide evidence for a reasonable factfinder to disbelieve the decision-maker's assertion. See Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1090 (11th Cir. 2004). Plaintiff falls well short of showing that she was so much more qualified that no reasonable decision-maker could have believed that Parker was more qualified. See Denney v. City of Albany, 247 F.3d 1172, 1187 (11th Cir. 2001) (plaintiff must show he was "substantially more qualified" with respect to all of the considerations relied upon by the decision-makers).

**A.    Plaintiff Cannot Show that Captain Leather Did Not Honestly Believe that Parker Performed Much Better During the Interview.**

As Defendant explained in his Initial Memorandum, (Init. Mem. at 31-32), Captain Leathers

testified that he hired the applicant whom he considered best qualified for the Chief position based on his assessment of the applicants' experience, as determined by interviews and Career Briefs. (Leathers Dec.¶ 25). More specifically, he explained that he considered the applicants substantially equivalent in technical qualifications and that the <u>distinguishing factor</u> in the selection process was Parker's superior interview performance.[4] (Leathers Dec. ¶¶17-19, 24-25, Ex. D). Captain Leathers believed that Parker displayed more enthusiasm during the interview and did a far better job of explaining, with far more details than Plaintiff, how his past experience (including his participation in higher level Numbered Air Force and Air Force Command inspections) made him the best person to lead the Office. (Leathers Dec. ¶ 25). In short, Captain Leathers and Major Butler both found Parker to be more energetic, enthusiastic, and sure of himself during the interview when talking about the Chief position, as if he could not wait to tell them what he would do if he were hired for the job. (Butler Dec. ¶¶ 5-6; Leathers Dec. ¶¶ 17-19).[5] Captain Leathers believed Parker did an excellent job communicating in his answers his vision for the future of the Office and what he would do if he got

---

[4]Captain Leathers explained why he concluded that the two applicants were substantially equivalent in technical qualifications. (Leathers Dec. ¶ 24). It is undisputed that Parker had held a GS-9 ART position in the education and training field for eight years (since 1998),while Plaintiff had only held a GS-9 ART position in that field for three years (since 2003). (<u>Id</u>.). Captain Leathers considered GS-9 level experience important as it generally indicated greater responsibility and expectations. (<u>Id</u>.). In his assessment, Plaintiff appeared to have more experience in the education aspect of field, mainly at the lower GS-7 ART level, while Parker appeared to have more experience in the training aspect. (<u>Id</u>.). Captain Leathers did not find it dispositive that Plaintiff worked in a Wing office while Parker worked in a Group office, since he was looking at education and training experience as a whole and both had such experience. (<u>Id</u>.). Moreover, he believed that the Maintenance Group, which Parker was responsible for in his GS-9 level ART position, was a large Group with lengthy, complicated, and important OJT requirements relating to aircraft safety. (<u>Id</u>.).

[5]Defendant's citation to Butler's Declaration is to the one attached to Defendant's Evidentiary Submission. Plaintiff also included a declaration from Major Butler with her Response, which was obtained by Plaintiff's improper <u>ex parte</u> contact with Defendant's management-level official.

the job.  (Leathers Dec. ¶ 19).  In contrast, Plaintiff appeared to be nervous and simply going through the motions with short and unelaborate answers.  (Leathers Dec.¶¶ 17-19; Butler Dec. ¶¶ 5-7).

Plaintiff has <u>no evidence</u> that Captain Leather is lying when he states that what set Parker apart from Plaintiff was Parker's superior interview performance.  It is <u>undisputed</u> that Parker's interview lasted three times as long as Plaintiff's short interview, even though the exact same open-ended questions were asked at each interview.  (Pl. Dep. 158:5-8, 194:6-13; Leathers Dec. ¶ 15; Butler Dec. ¶ 4).  Plaintiff cannot show that Captain Leathers is lying when he claims Parker did a much better job by showing enthusiasm and explaining with far more detailed answers why he was the best person for the job.  See <u>Kelley v. Goodyear Tire & Rubber Co.</u>, 220 F.3d 1174, 1178 (10th Cir. 2000) ("[it is the manager's perception of the [plaintiff's] performance that is relevant").  Plaintiff also cannot show that Captain Leathers is lying when he states that he was impressed with Parker's discussion during his interview of his higher-level inspection experience.[6]  (Leathers Dec. ¶ 22).

**B.     Plaintiff Cannot Show Pretext.**

Instead of directly addressing the reason for the promotion decision given by Captain Leathers, Plaintiff focuses on various factors that she would have used if she were making the selection decision, cites to the opinions of non-decision-makers, and states that Captain Leathers has never hired a Hispanic female to a supervisory position.  (Pl. Resp. 6, 26-30).  As set forth below, Plaintiff's arguments do not show that Captain Leather's explanation for his hiring decision is false.

**1.     Plaintiff Cannot Recast or Second-Guess the Hiring Criteria.**

This Court should reject Plaintiff's attempts to change the dispositive promotion criteria from

---

[6]To the extent Plaintiff attempts in her Response to minimize Parker's higher-level inspections that were discussed during his interview, she is improperly second-guessing the selection criteria.  See <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1543 (11th Cir. 1997).

interview performance to one based on those paper qualifications that Plaintiff considered important. The Eleventh Circuit has repeatedly rejected attempts by a plaintiff to recast an employer's proffered non-discriminatory reason.  See e.g., Chapman, 229 F.3d at 1030 ("A Plaintiff is not allowed to recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer.").  Instead, "[p]rovided that the reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it..."  See id.  The Eleventh Circuit has explained that a plaintiff, and the courts, must "take the reason proffered by the employer at the time of summary judgment, the reason presented to the district court, and examine it."  See id. at 1030, n. 19.  See also Anderson v. Westinghouse Savannah River Co., 406 F.3d 238, 269 (4th Cir. 2005) ("[plaintiff] cannot establish her own criteria for judging her qualifications for the promotion ...[but]... must compete for the promotion based on the qualifications established by her employer.").  Plaintiff has not done so but instead improperly "asks this Court to re-examine and second-guess the agency's personnel decisions."  See Brown v. Small, 437 F. Supp. 2d 125, 132 (D.D.C. 2006).

Captain Leathers indicated that the interview was the distinguishing factor among two applicants whom he believed were otherwise technically equal.  (Leathers Dec. ¶ 25).  An employer may rely on an applicant's interview performance when making a supervisory promotion.  See Bass v. Bd. of Comm'rs, 256 F.3d 1095, 1105-1106 (11th Cir. 2001); Chapman, 229 F.3d at 1033-1035; Cleveland v. Greene Cty. Sch. Dist., 2008 U.S. Dist. LEXIS 93926, at *20-21 (M.D. Ga. Nov. 18, 2008); Harris v. Rumsfeld, 428 F. Supp. 2d 460, 468 & n.5 (E.D. Va. 2006).  See also Holloway v. Woodley, 203 Fed. Appx. 563, 568 (5th Cir. 2006) (noting employer may rely on a poor interview, and that "...an interview is not merely a means by which to test verbal and interpersonal skills. Interviews may measure ... enthusiasm for applying ... skills to a particular job...").  Captain Leathers,

therefore, was entitled to make his selection based on interview performance and Plaintiff cannot dictate different criteria in her Response.  See Lee v. GTE, Fla., Inc., 226 F.3d 1249, 1254 (11th Cir. 2000) (an employer has discretion to choose among equally qualified applicants so long as it does not rely upon a discriminatory motive); Ogletree v. City of Auburn, 619 F. Supp. 2d 1152, 1169-70 (M.D. Ala. 2009) ("Plaintiffs do not get to pick and choose the ... criteria for awarding promotions...").

Instead of addressing her short and uninspired interview, however, Plaintiff devotes most of her Response to detailing her qualifications as if the selection decision were based solely on a paper review of extensive resumes and not on a basic Career Brief and an interview where the applicant was given the chance to explain how his or her experience made him or her best for the job.  Plaintiff, for example, now asserts that she was far better qualified for the Chief position because: (1) she had 13 years of experience in a Wing-level education office; (2) she conducted numerous staff assistance visits (not any higher-level inspections, however); (3) she had briefed the Wing Commander and his staff on education and training issues; (4) she had knowledge of the computer programs used by the office; (5) she had three associates degrees; and (6) she received "9s" on her evaluations and thus must have been an outstanding employee.  (Pl. Resp. at 6-8, 26-31).  She also asserts that Captain Leathers should have listened to his military supervisor, Major Butler, and given weight to Plaintiff's educational background, and that her military supervisory experience should have been given more significance in the selection decision.  (Pl. Resp. at 28-30).  Finally, Plaintiff uses her Response to re-score the interview as if she were re-doing her interview now with advance notice of the questions and scoring criteria and unlimited time to explain her experience in writing.[7]  (Pl. Resp. at 6, 26-30).

---

[7]Notably, the points assigned to the answers are irrelevant, since Captain Leathers did not testify that he hired Parker because Parker had more points on the point scale.  (Leathers Dec ¶ 23).

None of Plaintiff's post-facto second-guessing in her Response shows pretext.  See Connor v. Lafarge North America, Inc., 2009 WL 2757182, at *5-6 (11th Cir. Sept. 1, 2009) (plaintiff could not challenge interview scores by evaluations that were not part of interview and disagreement with the decision-maker's assessment of the quality of his answers); Brown, 437 F. Supp. 2d at 132-133. Indeed, the vast majority of this alleged experience was not explained in Plaintiff's bare-bones Career Brief, and she did not explain it, in any detail, during her short, 15-minute interview.  (Leathers Dec. ¶¶ 11, 16-19, Ex. B; Butler Dec. ¶¶ 4-7, Ex. A; Leathers Tran. at 62:15-21, 63:4-12, 70:12-16, 73:19-74:4).  It remains undisputed that Parker simply did a far superior job explaining his experience, in much greater detail, during his 45-minute interview. (Leathers Dec. ¶25; Butler Dec. ¶¶ 4-7, Ex. A). While Plaintiff may want to ignore her short and lackluster interview and Parker's longer and more-detailed interview, neither she nor the Court can re-write history.  Notably, there was no cover letter or resume through which Plaintiff could detail her experience and why she should be promoted.  The Career Brief contained only basic employment information and did not list details as to what was done in each job. (Leathers Dec. ¶ 11, Ex. B).  Plaintiff thus had one chance - the interview - to detail her experience and emphasize the key points that she wanted Captain Leathers to focus on.  (Leathers Dec. ¶¶ 17-19).  While Plaintiff's counsel had the benefit of the questions and scoring sheets and unlimited time to list Plaintiff's experience, Plaintiff did not have such advance knowledge of the questions and scoring criteria and used only 15 minutes to present her experience at her interview. (Pl. Dep. at 159:17-161:9).  She cannot use her lawsuit to re-do her interview and make it better.

In fact, courts have rejected similar attempts by other plaintiffs to bypass poor interview performance by relying on other evidence of their qualifications.  See Connor, 2009 WL 2757182, at *5-6; Harris, 428 F. Supp. 2d at 464 & 467.  In Harris, for example, the defendant explained that

- 22 -

the plaintiff was not hired because she performed poorly during her interview by appearing unprepared for questions, failing to elaborate on her professional assets and achievements, and giving brief answers. See Harris, 428 F. Supp. 2d at 464 & 467. The plaintiff admitted that she had lost her train of thought during the interview and did not perform well because she thought her interview had been unfairly delayed and she got nervous waiting. See id. at 463-464. She attempted to show pretext not by challenging her poor interview, but by citing to the exceptional performance reviews that a selecting official had given her. See id. at 469. The court rejected this argument, stating that "[t]his argument ignores the fact that the selectees for the promotion were ultimately chosen on the basis of their interview performance, and it is undisputed that [plaintiff] performed poorly during her interview." See id. This Court should likewise reject Plaintiff's attempt to ignore her poor interview.

**2.     The Opinions of Non-Decisionmakers are Irrelevant.**

Plaintiff also cannot show pretext by relying upon an EEO investigator's preliminary opinion that Captain Leather's reason for his decision was not worthy of belief or the opinions of non-decision-makers that she was more qualified. (Pl. Resp. at 11, 26-31, Ex. 16.) While Plaintiff and some other employees (such as Lubbert, Major Butler, Ms. Kaestner) may believe she was more qualified than Parker based on her overall civilian and military background instead of what was discussed at her interview, (Pl. Dep. 244:20-245:7; Pl. Resp. at 35-37), the opinions of these non-decision-makers are irrelevant and do not show that Captain Leathers is lying when he explains his decision. See McCann v. Tillman, 526 F.3d 1370, 1377 (11th Cir. 2008; Brooks, 446 F.3d at 1164 ("[O]ur [prextext] inquiry ... is not concerned with [plaintiff's] belief that [she] was more qualified or whether we could conclude that [she] was better qualified..."); Gamble v. Aramark Uniform Servs., 132 Fed. Appx. 263, 266 (11th Cir. 2005) ("It is the perception of the decision maker which is

relevant....The alleged opinions of...co-workers as to the quality of [plaintiff's] work are ... 'close to irrelevant'"); Youssef v. FBI, 541 F. Supp. 2d 121, 151 (D.D.C. 2008).

Furthermore, this Court should disregard Plaintiff's references to the EEO investigator's preliminary opinion. See Williams v. Alabama Indus. Dev't Tr'g, 146 F. Supp. 2d 1214, 1224 (M.D. Ala. 2001). Indeed, the investigator relied upon an incomplete record, failed to cite a single Eleventh Circuit case or any legal authority, and improperly recast and second guessed Defendant's legitimate, non-discriminatory reason for the promotion by, among other things, relying upon Plaintiff's irrelevant performance reviews.[8] (Pl. Resp., Ex. 16). This flawed opinion based on an incomplete record is irrelevant. See Williams, 146 F. Supp. 2d at 1224 (rejecting notion that EEOC cause determination based on incomplete record mandated denial of summary judgment, and stating EEOC "cannot usurp the judiciary's role in determining whether there is a genuine issue of material fact.").

### 3. Plaintiff Cannot Show Pretext with Naked Statistics.

Finally, Plaintiff cannot show pretext by simply asserting in a conclusory manner, that Captain Leathers had never hired a female, Hispanic for a supervisory position. (Pl. Resp. at 31). The Eleventh Circuit has routinely condemned the use of such "naked" statistics which fail to reference important contextual factors such as the racial or gender breakdown of the relevant applicant pool for specific positions. See Alexander v. Fulton County, 207 F.3d 1303, 1326-1327 (11th Cir. 2000). Furthermore, neither naked statistics nor hiring decisions by non-decision makers have any bearing on the motivation behind a specific employment decision. See Antonio v. The Sygma Network, Inc., 458 F.3d 1177, 1184 (10th Cir. 2006) (noting that "statistics shed little light on the central issue of

---

[8]Plaintiff fails to mention that, after considering a fuller record, an Administrative Law Judge concluded that Plaintiff could not show pretext. ((Pl. Dep. 204:5-204:25, Ex. 18).

the pretext analysis – the motive behind [defendant's] decision not to hire [plaintiff]").

### C.    Conclusion.

In sum, there is simply no evidence that Captain Leathers' asserted reliance on Parker's superior interview performance in hiring him for this supervisory ART position is pretext. See Harrell v. State of Alabama Dep't of Educ., 2009 U.S. App. LEXIS 11733, at *6 (11th Cir. June 1, 2009) ("[Plaintiff] failed to rebut [defendant's] contention that [the selectees] performance in the interview was superior" and thus failed to show pretext); Cleveland, 2008 U.S. Dist. LEXIS 93926, at *21-22 & n.7 (granting summary judgment and noting "plaintiff directs the court to no evidence suggesting [the decision-maker] did not, in fact, base his decision on his honest assessment that Plaintiff performed poorly during the interview or the successful candidates' superior qualifications."). Plaintiff, therefore, falls well short of showing that no reasonable person, in the exercise of impartial judgment, could have hired Parker instead of her. See Wilson, 376 F.3d at 1090.

### CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant this Motion.

Respectfully submitted this 21st day of January, 2010.

LEURA G. CANARY
United States Attorney

By:  s/James J. DuBois_____
JAMES J. DUBOIS
Assistant United States Attorney
GA Bar Number: 231445
Post Office Box 197
Montgomery, AL  36101-0197
Telephone No.: (334) 223-7280
Facsimile No.: (334) 223-7418
E-mail: **James.DuBois2@usdoj.gov**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff's counsel Joseph C. Guillot.

s/James J. DuBois_____
Assistant United States Attorney
